FILED

## PETITION FOR WRIT OF HABEAS CORPUS
### UNDER 28 U.S.C. 2254

2006 FEB 10 ' A 10: 39

CLERK, US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| Prisoner's name: | Thomas James Moore |
| Prisoner's number: | DOC No. 116335 |
| Place of Confinement: | UNION CORRECTIONAL INSTITUTION |
| | Raiford, Florida |

### IN THE UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

THOMAS JAMES MOORE,

    Petitioner,

v.                                          CASE NO.

JAMES V. CROSBY, JR.,                       3:06-cv-127-J-25HTS
    Secretary, Florida
    Department of Corrections,

    Respondent,

and

CHARLES J. CRIST, JR.,
    Attorney General,

    Additional Respondent.
_____/

### PETITION

1.  **Name and location of court which entered the judgment of conviction under attack and state court case number(s):**

    Circuit Court of the Fourth Judicial Circuit, Duval County, Florida, Case No. 93-1659-CF

2.  **Date of judgment and conviction:**

Found guilty by jury on October 29, 1993; jury recommendation of death on November 3, 1993; sentenced by judge on December 2, 1993.

3.  **Length of sentence:**

Sentence of death; two life sentences; one thirty (30) year sentence; and one ten (10) year sentence.

4.  **Sentencing judge:**

Honorable John D. Southwood

5.  **Nature of offense or offenses for which you were convicted:**

First-degree murder, armed burglary, arson of a dwelling, attempted robbery with a firearm, and conspiracy to commit robbery with a firearm.

6.  **What was your plea?**

Not guilty

7.  **Type of trial:**

Jury trial

8.  **Did you testify at trial?**

Yes.

9.  **Did you appeal from the judgment of the conviction?**

Yes

10. **If you did appeal, answer the following:**

A)  Name of court: Florida Supreme Court

B)  Result: Affirmed

C)  Date of result: 10/02/97, Moore v. State, 701 So.2d 545 (Fla. 1997); rehearing denied on 11/18/97.

2

**If you filed a second appeal or filed a petition for certiorari in the Florida Supreme Court or the United Supreme Court, give details:**

Certiorari was denied by the United States Supreme Court, <u>Moore v. Florida</u>, 523 U.S. 1083 (1998).

11. **Did you file any postconviction motions under either Florida Rule of Criminal Procedure 3.800 or 3.850 with the state trial court or any other postconviction motions or petitions for writ of habeas corpus with the state trial court or state appellate court to this judgment and conviction?**

   Yes

12. **If you did file any matters within the realm of question 11, answer the following as to each motion or petition.**

   A)   **The type of motion/ petition filed; B) Date motion/petition filed; C) Name of court; D) Result; E) Date of Result**

   <u>1. Motion for Post Conviction Relief #1</u>

   A)   Rule 3.850 Motion

   B)   3/26/99; amended 6/22/99, 9/20/99 and 4/06/00

   C)   Circuit Court of the Fourth Judicial Circuit, Duval County

   D)   Summarily denied, with circuit court striking 4/06/00 amendment

   E)   8/04/00; rehearing denied 9/08/00.

   <u>2. State Writ #1</u>

   A)   Petition for writ of habeas corpus

   B)   4/02/01

3

C)    Florida Supreme Court

D)    Denied

E)    3/07/02, <u>Moore v. State</u>, 820 So. 2d 199 (Fla. 2002); rehearing denied 6/20/02.

3.    <u>Motion for Postconviction Relief #2</u>

A)    Rule 3.850 Motion

B)    7/19/02

C)    Circuit Court of the Fourth Judicial Circuit, Duval County

D)    Denied

E)    12/30/02; rehearing denied 2/25/03.

4.    <u>State writ #2</u>

A)    Petition for writ of habeas corpus

B)    5/13/04

C)    Florida Supreme Court

D)    Denied

E)    12/16/04, summary order of denial, <u>Moore v. Crosby</u>, FSC Case No. SC04-834; rehearing denied 3/21/05.

5.    <u>State writ #3</u>

A)    Petition for writ of habeas corpus

B)    3/23/05

C)    Florida Supreme Court

D)    Denied, rehearing pending

4

E)   10/18/05, summary order of denial, <u>Moore v.</u>
<u>Crosby</u>, FSC Case No. 05-498; rehearing pending.

6.   <u>Motion for Postconviction Relief #3</u>

A)   Rule 3.850 Motion

B)   1/27/06

C)   Circuit Court of the Fourth Judicial Circuit,
Duval County

D)   Pending

13.   **If your motion or petition described in paragraph 12
was denied, did you file an appeal of that denial with
the appropriate state appellate court?**

Yes

**As to each motion or petition indicate:**

**A)Name of court where appeal filed; B) Date appeal
filed; C) Result; D) Date of Result**

1.   <u>Motion for Postconviction Relief #1</u>

A)   Florida Supreme Court

B)   Notice of appeal filed.

C)   Affirmed

D)   3/07/02, <u>Moore v. State</u>, 820 So. 2d 199 (Fla.
2002); rehearing denied 6/20/02.

2.   <u>Motion for Postconviction Relief #2</u>

A)   Florida Supreme Court

B)   Notice of appeal filed on 3/20/03.

C)   Affirmed

D)   6/7/04, summary order, <u>Moore v. State</u>, FSC Case
     No. SC03-489; rehearing denied 10/8/04.

**14. State concisely every ground on which you claim you are
being held unlawfully.  Summarize briefly the facts
supporting each ground.**

<u>**STATEMENT OF EXHAUSTION**</u>

In accordance with this Court's order dated November 4,
2004, Petitioner herein describes how each ground in the
federal petition was exhausted in the state court:

Ground I was raised in Mr. Moore's second petition for
a writ of habeas corpus filed in the Florida Supreme Court
on May 13, 2004.  The court denied the petition on the
merits in a summary order issued on December 16, 2004,
stating: "Thomas James Moore has filed a petition for writ
of habeas corpus, raising claims based on *Delgado v. State*,
776 So. 2d 233 (Fla. 2002), *Crawford v. Washington*, 124
S.Ct. 1354 (2004), *Brennan v. State*, 754 So. 2d 1, 30 (Fla.
1999), and *Ring v. Arizona*, 536 U.S. 584 (2002). The
petition is hereby denied. The State's motion to dismiss is
hereby denied as moot."

Ground II was raised in Mr. Moore's direct appeal.
<u>Moore v. State</u>, 701 So.2d 545 (Fla. 1997).  Ground II was
also raised in Mr. Moore's second petition for a writ of
habeas corpus filed in the Florida Supreme Court on May 13,

6

2004.  The court denied the petition on the merits in a summary order issued on December 16, 2004, stating: "Thomas James Moore has filed a petition for writ of habeas corpus, raising claims based on *Delgado v. State*, 776 So. 2d 233 (Fla. 2002), *Crawford v. Washington*, 124 S.Ct. 1354 (2004), *Brennan v. State*, 754 So. 2d 1, 30 (Fla. 1999), and *Ring v. Arizona*, 536 U.S. 584 (2002). The petition is hereby denied. The State's motion to dismiss is hereby denied as moot."

Ground III was raised in Mr. Moore's second petition for a writ of habeas corpus filed in the Florida Supreme Court on May 13, 2004.  The court denied the petition on the merits in a summary order issued on December 16, 2004, stating: "Thomas James Moore has filed a petition for writ of habeas corpus, raising claims based on *Delgado v. State*, 776 So. 2d 233 (Fla. 2002), *Crawford v. Washington*, 124 S.Ct. 1354 (2004), *Brennan v. State*, 754 So. 2d 1, 30 (Fla. 1999), and *Ring v. Arizona*, 536 U.S. 584 (2002). The petition is hereby denied. The State's motion to dismiss is hereby denied as moot."

Ground IV was raised as Claim IV of Mr. Moore's second petition for a writ of habeas corpus filed in the Florida Supreme Court on May 13, 2004.  The court denied the petition on the merits in a summary order issued on December

7

16, 2004, stating: "Thomas James Moore has filed a petition for writ of habeas corpus, raising claims based on *Delgado v. State*, 776 So. 2d 233 (Fla. 2002), *Crawford v. Washington*, 124 S.Ct. 1354 (2004), *Brennan v. State*, 754 So. 2d 1, 30 (Fla. 1999), and *Ring v. Arizona*, 536 U.S. 584 (2002). The petition is hereby denied. The State's motion to dismiss is hereby denied as moot." After the court denied the petition, but while a motion for rehearing was pending, the Supreme Court issued <u>Roper v. Simmons</u>. Mr. Moore immediately filed a motion seeking an opportunity to submit briefing regarding the impact of <u>Roper v. Simmons</u> on Claim IV. The Florida Supreme Court denied the motion "without prejudice to the issue being raised in a separate proceeding." <u>Moore v. Crosby</u>, Order dated 3/21/05, Case No. SC04-834. Mr. Moore then raised this claim in his third habeas corpus petition filed in the Florida Supreme Court on March 23, 2005. Though that petition was denied on Ocotber 18, 2005, a motion for rehearing is still pending before the Florida Supreme Court.

Ground V was raised in Mr. Moore's direct appeal. <u>Moore v. State</u>, 701 So.2d 545 (Fla. 1997). Ground V was also raised in Mr. Moore's first habeas petition filed in the Florida Supreme Court on April 2, 2001. The petition

8

was denied on March 7, 2002, <u>Moore v. State</u>, 820 So. 2d 199 (Fla. 2002), and rehearing was denied on June 20, 2002.

Ground VI was raised in Mr. Moore's initial Rule 3.850 motion, which was filed on March 26, 1999, and amended on June 22, 1999, September 20, 1999, and April 6, 2000.  The circuit court summarily denied the motion on August 4, 2000, and denied rehearing on September 8, 2000.  On appeal, the Florida Supreme Court affirmed.  <u>Moore v. State</u>, 820 So. 2d 199 (Fla. 2002).

Ground VII was raised in Mr. Moore's initial Rule 3.850 motion, which was filed on March 26, 1999, and amended on June 22, 1999, September 20, 1999, and April 6, 2000.  The circuit court summarily denied the motion on August 4, 2000, and denied rehearing on September 8, 2000.  On appeal, the Florida Supreme Court affirmed.  <u>Moore v. State</u>, 820 So. 2d 199 (Fla. 2002).

Ground VIII was raised in Mr. Moore's initial Rule 3.850 motion, which was filed on March 26, 1999, and amended on June 22, 1999, September 20, 1999, and April 6, 2000.  The circuit court summarily denied the motion on August 4, 2000, and denied rehearing on September 8, 2000.  On appeal, the Florida Supreme Court affirmed.  <u>Moore v. State</u>, 820 So. 2d 199 (Fla. 2002).

Ground IX was raised in Mr. Moore's initial Rule 3.850 motion, which was filed on March 26, 1999, and amended on June 22, 1999, September 20, 1999, and April 6, 2000. The circuit court summarily denied the motion on August 4, 2000, and denied rehearing on September 8, 2000. On appeal, the Florida Supreme Court affirmed. Moore v. State, 820 So. 2d 199 (Fla. 2002).

Ground X was raised in Mr. Moore's direct appeal, and found to be harmless error. Moore v. State, 701 So.2d 545 (Fla. 1997).

Ground XI was raised in Mr. Moore's initial state habeas petition, which was filed on April 2, 2001, and denied on March 7, 2002. Moore v. State, 820 So. 2d 199 (Fla.2002).

Ground XII was raised in Mr. Moore's initial Rule 3.850 motion, which was filed on March 26, 1999, and amended on June 22, 1999, September 20, 1999, and April 6, 2000. The circuit court summarily denied the motion on August 4, 2000, and denied rehearing on September 8, 2000. On appeal, the Florida Supreme Court affirmed. Moore v. State, 820 So. 2d 199 (Fla. 2002).

Ground XIII was raised in Mr. Moore's second Rule 3.850 motion, which was filed on July 19, 2002, and was summarily

denied on December 30, 2002.  On appeal, the Florida Supreme

Court affirmed on June 7, 2004, in a summary order.  <u>Moore</u>

<u>v. State</u>, FSC Case No. SC03-489.

Ground XIV was raised in Mr. Moore's third Rule 3.850

motion, which was filed on January 27, 2006, and is

currently pending before the state circuit court.

Ground XV was raised in Mr. Moore's third Rule 3.850

motion, which was filed on January 27, 2006, and is

currently pending before the state circuit court.

Ground XVI was raised in Mr. Moore's third Rule 3.850

motion, which was filed on January 27, 2006, and is

currently pending before the state circuit court.

## GROUND I

**MR. MOORE'S CONVICTION FOR ARMED BURGLARY VIOLATES HIS RIGHTS TO DUE PROCESS AND TO NOTICE AND A MEANINGFUL OPPORTUNITY TO BE HEARD, AS WELL AS THE FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND THE INVALIDITY OF THE ARMED BURGLARY CONVICTION REQUIRES VACATING MR. MOORE'S CONVICTION FOR FIRST-DEGREE MURDER.**

One of the charges against Mr. Moore was armed

burglary.  Regarding this charge, the indictment alleged:

THOMAS JAMES MOORE on the 21st day of January, 1993, .
. . did unlawfully enter or remain in a structure, to-
wit: a dwelling . . . with the intent to commit an
offense therein, to-wit, Robbery, and while in the
course of committing the offense was armed with a

11

dangerous weapon, to-wit: a firearm, contrary to the
provisions of Section 810.02, Florida Statutes.

(R1. 4).   In closing at the guilt/innocence phase, the State

argued that although Mr. Moore had permission to enter Mr.

Parrish's house, he committed burglary by remaining in the

house without permission:

> You are going to hear also about burglary.  This one is
> a little bit tricky because the law requires that the
> defendant remain in a structure.  It's actually enter
> or remain in a structure owned by or in the possession
> of Mr. Johnny [Parrish].  And that he did not have the
> permission to enter or remain in the structure by Mr.
> Johnny.  Mr. Johnny didn't give him permission, and at
> the time of remaining in the structure he had an intent
> to commit a crime, robbery.  Why it's tricky is that
> the law says you can enter in it or remain in, and we
> know that this defendant was allowed to come in by Mr.
> Johnny.  But the reason why he is guilty of burglary is
> because at the time that he remained in, when he pulled
> that gun on Mr. Johnny to get his goods from him, he no
> longer had Mr. Johnny's consent to be in that residence
> and to harm him.  And the law states that either
> entering or remaining in the residence with intent to
> commit this crime is burglary.

(R12. 1215-16).  The court instructed the jury consistently

with the State's argument:

> Before you can find the defendant guilty of
> burglary, the State must prove the following three
> elements beyond a reasonable doubt:
>
> 1.   Thomas James Moore remained in a structure owned
> by or in the possession of John Edward Parrish;
>
> 2.   Thomas James Moore did not have the permission
> or consent of John Edward Parrish, or anyone authorized
> to act for him, to remain in the structure at the time;

12

3.  At the time of remaining in the structure Thomas James Moore had a fully-formed conscious intent to commit the offense of robbery in that structure.

(R13. 1359).  The jury found Mr. Moore guilty of armed burglary as charged (R13. 1382).

In Florida, a burglary conviction is invalid when "initial entry into the victim's residence was consensual and there was no evidence . . . of a burglary other than the commission of crimes within the residence." State v. Ruiz, 863 So. 2d 1205, 1208 (Fla. 2003); Delgado v. State, 776 So. 2d 233 (Fla. 2000).  Put another way, "evidence of a crime committed inside [a] dwelling . . . of another cannot, in and of itself, establish the crime of burglary." Ruiz, 863 So. 2d at 1211.  This definition of burglary applied at the time of Mr. Moore's conviction, Ruiz, and this definition describes exactly the situation in Mr. Moore's case: the entry into Mr. Parrish's home was consensual, and there is no evidence of burglary other than the crimes committed in the home.  The State conceded as much in its closing argument, and the court instructed the jury that the basis of the burglary charge was "remaining in."  Mr. Moore's burglary conviction is invalid. Bunkley v. Florida, 538 U.S. 835 (2003).

13

Because his burglary conviction is invalid, Mr. Moore is entitled to a new trial. Mr. Moore was prosecuted for first-degree murder under both premeditated and felony murder theories. The State argued both theories (R12. 1213-14), and argued that either attempted robbery or burglary could provide the basis for felony murder (R12. 1214). The jury was instructed on both of these theories and was instructed that attempted robbery and/or burglary could form the basis for a felony murder conviction (R13. 1346-48). The jury returned a general verdict finding Mr. Moore guilty of first-degree murder (R13. 1346-48, 1381). In these circumstances, the invalidity of Mr. Moore's burglary conviction requires vacating his first-degree murder conviction. <u>Yates v. United States</u>, 354 U.S. 298 (1957); <u>Fitzpatrick v. State</u>, 859 So. 2d 486, 490-91 (Fla. 2003).

**Exhaustion of Ground I in state courts:**

1) **Did you raise Ground I in the Florida Supreme Court on a direct appeal of your conviction?** No.

2) **After your conviction, did you raise Ground I in the state circuit court that sentenced you by filing a motion under Florida Rule of Criminal Procedure 3.850?** No.

   a) **If your answer is "yes", then state:**
      I. **Date motion filed:** N/A

      ii. **Whether you received an evidentiary hearing:** N/A

14

      **iii. Result:** N/A.

      **iv. Date of Result:** N/A.

  **b)**   **If your Rule 3.850 Motion was denied, did you file an appeal of that denial with the Supreme Court of Florida?** N/A.

      **I.**   **If you failed to appeal the denial of your Rule 3.850 motion, explain briefly why:** N/A

      **ii.**  **Date appeal filed, result of appeal, date of result:** N/A.

**3)**   **Have you raised Ground I in any other petition, application, or motion filed in the state courts of Florida?** Yes.  Ground I was raised in Mr. Moore's second petition for a writ of habeas corpus filed in the Florida Supreme Court on May 13, 2004.  The court denied the petition on the merits in a summary order issued on December 16, 2004, stating: "Thomas James Moore has filed a petition for writ of habeas corpus, raising claims based on *Delgado v. State*, 776 So. 2d 233 (Fla. 2002), *Crawford v. Washington*, 124 S.Ct. 1354 (2004), *Brennan v. State*, 754 So. 2d 1, 30 (Fla. 1999), and *Ring v. Arizona*, 536 U.S. 584 (2002). The petition is hereby denied. The State's motion to dismiss is hereby denied as moot."

**GROUND II**

**THE TRIAL COURT'S LIMITATIONS ON CROSS-EXAMINATION OF STATE WITNESSES DEPRIVED MR. MOORE OF HIS SIXTH AMENDMENT CONFRONTATION RIGHTS.**

Mr. Moore's convictions and death sentence arose from the death of John Parrish on January 21, 1993 (R1. 3-5). Mr. Parrish's body was discovered when neighbors noticed a fire in his house (R9. 688-89).  The medical examiner

testified that Mr. Parrish had been shot twice and was dead before the fire began (R9. 736-38).

Several State witnesses testified that earlier that afternoon, they had seen Mr. Moore talking to Carlos Clemons and Vincent Gaines (R8. 457; R9. 602-03, 632-33, 656). Some minutes before the fire, several witnesses heard gunshots (R8. 489-90). At the time of the shots, Gaines was standing on the street in the rain, and Clemons and Moore were gone (R8. 460-61).

Gaines testified that Mr. Moore told him and Clemons that they could get money from Mr. Parrish (R8. 542-44). Gaines agreed to be the lookout (R8. 545-56). After standing on the corner for about seven minutes, Gaines heard two shots and saw Clemons come out of Mr. Parrish's house, go back in and come out again (R8. 547-48). Gaines testified that Clemons told him that Mr. Moore shot Mr. Parrish twice in the chest (R8. 549-50). Over defense objection to hearsay, Gaines was also allowed to testify that Clemons said he went back into Mr. Parrish's house because Mr. Moore pointed a gun at him and told him they were not done yet (R8. 586-87, 591).

On cross-examination, the defense attempted to ask Gaines whether he and Clemons, armed with a gun, had

16

confronted and chased a boy named Little Terry through the victim's neighborhood earlier on the day the victim was shot. Defense counsel proffered the questions at sidebar, but the trial court refused to allow the bulk of the questions, saying that Gaines had already testified that he was not with Clemons at that time of day (R8. 566-68).

Clemons testified that Mr. Moore said he and Gaines could get money from Mr. Parrish (R10. 787). According to Clemons, Mr. Moore told Gaines to be the lookout and told Clemons to go into the house with him (R10. 790). Clemons asserted the neither he nor Gaines had a gun that day (R10. 791). Clemons testified that Mr. Parrish invited him and Mr. Moore into Mr. Parrish's house and offered them moonshine (R10. 792-93). After they tasted the moonshine, Mr. Moore pulled out a gun and asked Mr. Parrish for money (R10. 796). Mr. Parrish said nothing, and Mr. Moore shot him in the chest (R10. 796). Clemons turned to leave the house and heard a second shot (R10. 800). When Clemons started out the front door, Mr. Moore stopped him, pointed the gun at him and said, "We are not finished yet" (R10. 804). Clemons ran out the door and caught up with Gaines, who was running down the street (R10. 804).

On cross-examination, the defense attempted to ask Clemons what he did with the gun he had in his possession on the day the victim was shot (R10. 826). The trial court refused to allow the question, saying, "There is no evidence of that anywhere" (R10. 826). The defense then asked a series of questions, and Clemons admitted that he and Gaines had chased Little Terry down the street (R10. 829). However, when defense counsel followed up with the question, "Now, is it your testimony that you were not armed with a firearm at that time?", the trial court sustained an objection and refused to allow the question (R10. 828).

The incident in which Gaines and Clemons chased Little Terry through the neighborhood with a gun was critical to the defense theory that Clemons, not Mr. Moore, killed Mr. Parrish and that Gaines and Clemons were lying (R12. 1260). The incident also was crucial for impeachment since Gaines denied the incident took place (R8. 568-69), while Clemons admitted chasing Little Terry but denied having a gun (R10. 829), and witness Willie Reese said Gaines and Clemons chased Little Terry but did not mention whether or not they had a gun (R9. 609-13). Mr. Moore testified that Gaines and Clemons chased Little Terry with a gun (R11. 1094). Little Terry testified that Gaines and Clemons chased him and that

18

Clemons started to pull out a gun (R12. 1189-90). The trial court's limitations on cross-examination denied the defense the opportunity to develop the defense theory and to present impeachment.

The State also presented the testimony of a fire arson investigator, Earl Mattox, about the origin of the fire in Mr. Parrish's house. Mattox testified that the fire originated at two separate points in the house and was caused by arson (R10. 905). In Mattox's opinion, the fires were set by lighting a combustible material such as clothing or paper (R10. 912).

On cross-examination, the defense asked whether any accelerants--flammable liquids such as gasoline--were present, and Mattox answered no (R10. 917-20). Defense counsel then asked the arson expert, "If you have any question at all in your mind as to whether or not some sort of flammable liquid has been used, you have available to you, do you not, the Office of the Florida Fire College Laboratories; is that right?" (R10. 920). Mattox answered yes, and defense counsel then asked, "And they have gaschromatography machines--". At this point, the State interrupted the defense with an objection as to relevance, which the trial court quickly sustained (R10. 920). Defense

19

counsel asked to proffer the proposed questioning, but the trial court refused to allow the proffer (R10. 920).   The trial court denied the defense motion for mistrial (R10. 921).

The defense attempt to cross-examine Mattox regarding the absence of accelerants in the fire and the scientific methods of ensuring that no accelerants were used was crucial to impeaching the credibility of State witness Christopher Shorter, who testified that Mr. Moore confessed he had killed Mr. Parrish (R11. 1000).   Shorter claimed that Mr. Moore said he had used a lawn mower in the house to set the fire, taking the top off the mower and using the gasoline as an accelerant (R11. 1003).   The best way for the defense to show that Shorter was lying was to establish conclusively through Mattox that the fire was not started with gasoline from a lawn mower.   However, the trial court cut off the cross-examination of Mattox, leaving the defense unable to attack Shorter's credibility.

**Exhaustion of Ground II in state courts:**

**1)   Did you raise Ground II in the Florida Supreme Court on a direct appeal of your conviction?** Yes

**2)   After your conviction, did you raise Ground II in the state circuit court that sentenced you by filing a motion under Florida Rule of Criminal Procedure 3.850?** No

a)   **If your answer is "yes", then state:**
   I.   **Date motion filed:** N/A

   ii.  **Whether you received an evidentiary hearing:** N/A

   iii. **Result:** N/A

   iv.  **Date of Result:** N/A

b)   **If your Rule 3.850 Motion was denied, did you file an appeal of that denial with the Supreme Court of Florida?** N/A

   I.   **If you failed to appeal the denial of your Rule 3.850 motion, explain briefly why:** N/A

   ii.  **Date appeal filed, result of appeal, date of result:** N/A

3)   **Have you raised Ground II in any other petition, application, or motion filed in the state courts of Florida?** Yes.  Ground II was raised in Mr. Moore's second petition for a writ of habeas corpus filed in the Florida Supreme Court on May 13, 2004.  The court denied the petition on the merits in a summary order issued on December 16, 2004, stating: "Thomas James Moore has filed a petition for writ of habeas corpus, raising claims based on *Delgado v. State*, 776 So. 2d 233 (Fla. 2002), *Crawford v. Washington*, 124 S.Ct. 1354 (2004), *Brennan v. State*, 754 So. 2d 1, 30 (Fla. 1999), and *Ring v. Arizona*, 536 U.S. 584 (2002). The petition is hereby denied. The State's motion to dismiss is hereby denied as moot."

### GROUND III

**MR. MOORE'S RIGHT OF CONFRONTATION WAS VIOLATED AT THE PENALTY PHASE OF HIS CAPITAL TRIAL, IN VIOLATION OF THE SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.**

21

Before trial, the defense filed a "Demand For Notice Of Intent To Rely On Hearsay" (R3. 364A-365). The motion requested that the State be required "to advise the defendant with reasonable particularity of any hearsay statements or evidence that it intends to introduce" in the penalty phase (R3. 364A). The motion pointed out that Section 921.141(1) "allows the Court to receive 'any such evidence' which the Court deems to 'have probative value' (including hearsay) providing that the defendant be afforded 'a fair opportunity to rebut any hearsay statements'" (R3. 364A). The motion then argued that this relaxed rule regarding hearsay impaired the defense's ability to prepare to rebut any hearsay evidence without notice of what that evidence would be:

> 2. The undersigned counsel is familiar with the limited exceptions to the prohibitions against hearsay contained in the Rules of Evidence. Accordingly, he is able to conduct discovery and prepare for trial in such fashion as to anticipate what evidence will be received. However, relaxation of the rule against hearsay wholly undermines his ability to anticipate the evidence to be presented by the State. Persons might be allowed to testify regarding matters as to which they had no direct personal knowledge.

> 3. If the defendant is to have a fair opportunity to rebut such evidence, he must have notice of such hearsay well in advance of its presentation.

> 4. To deny this request would be to the prejudice of the defendant and would be a violation of the Fifth,

22

Sixth, Eighth and Fourteenth Amendments to the United
States Constitution.

(R3. 365). The defense argued this motion before the penalty
phase began (R13. 1388-92). The court denied the motion, finding
it did not have the authority to require the State to give
advance notice of its evidence and noting that "there may be a
relaxation of the admissibility of hearsay" (R13. 1392).

In its case at the penalty phase, the State introduced Mr.
Moore's prior convictions for armed robbery and aggravated
battery (R14. 1458-59). After introducing the convictions into
evidence, the State called Detective Goff, a detective with the
Duval County Sheriff's Office. Over a defense hearsay objection,
the State was permitted to elicit testimony regarding the victim
of the armed robbery: "This was a white female, 23 years old,
named Cynthia Hyman that was robbed on that date" (R14. 1452).
Detective Goff further explained, "Yes, Cynthia Hyman identified
Thomas Moore as being the suspect with the pistol" (R14. 1452).
In cross-examination, Detective Goff acknowledged that Mr. Moore
was 15 years old at the time of the armed robbery[1] and that he
was in the company of two others, one who was "a few days
younger" than Mr. Moore and another "who was 17" (R14. 1453).

---

[1]Mr. Moore was born April 20, 1973 (R14. 1468).

23

In closing argument, the State then urged the jury to find the prior violent felony conviction aggravator, arguing, "[t]he defendant has been previously convicted of another capital offense, or of a felony involving the use of threat of violence to some person" (R14. 1525).  To support this aggravator, the State relied upon the judgments and sentences it had introduced into evidence and upon Detective Goff's testimony (R14. 1525-26). The State pointed out to the jury that the judgment and sentence from the armed robbery revealed that Mr. Moore "was given a chance at that young age to be placed on community control.  And that was the sentence for this crime" (R14. 1525).  The State then observed that Mr. Moore "violated that community control" when he was convicted of aggravated assault on April 23, 1991 (R14. 1525).[2]  The State placed emphasis upon the prior convictions as aggravating circumstances, arguing, "Two prior violent felonies committed by this defendant before he was 19 years old.  The legislature says that is aggravation.  That is a reason that you can recommend the death penalty against Thomas Moore" (R14. 1526).

---

[2]This conviction occurred three days after Mr. Moore's eighteenth birthday for a crime occurring on January 30, 1991, nearly three months before his eighteenth birthday.

The State's presentation of testimonial hearsay at the penalty phase violated Mr. Moore's constitutional right to confront his accusers.  The State was permitted to present the testimony of a police officer regarding what witnesses had said about the facts and circumstances underlying prior convictions that the State was presenting as aggravating circumstances. Further, the State was permitted to go beyond the fact that Mr. Moore was previously convicted and argue other facts contained in the judgments and sentences which the State introduced.  These occurrences were in clear violation of the Confrontation Clause.

**Exhaustion of Ground III in state courts:**

1) **Did you raise Ground III in the Florida Supreme Court on a direct appeal of your conviction?** No

2) **After your conviction, did you raise Ground III in the state circuit court that sentenced you by filing a motion under Florida Rule of Criminal Procedure 3.850?** No

   a) **If your answer is "yes", then state:**
      I. **Date motion filed:** N/A

      ii. **Whether you received an evidentiary hearing:** N/A

      iii. **Result:** N/A

      iv. **Date of Result:** N/A

   b) **If your Rule 3.850 Motion was denied, did you file an appeal of that denial with the Supreme Court of Florida?** N/A

       I.   **If you failed to appeal the denial of your Rule 3.850 motion, explain briefly why:** N/A

      ii.  **Date appeal filed, result of appeal, date of result:** N/A

3)  **Have you raised Ground III in any other petition, application, or motion filed in the state courts of Florida?** Yes.   Ground III was raised in Mr. Moore's second petition for a writ of habeas corpus filed in the Florida Supreme Court on May 13, 2004.   The court denied the petition on the merits in a summary order issued on December 16, 2004, stating: "Thomas James Moore has filed a petition for writ of habeas corpus, raising claims based on *Delgado v. State*, 776 So. 2d 233 (Fla. 2002), *Crawford v. Washington*, 124 S.Ct. 1354 (2004), *Brennan v. State*, 754 So. 2d 1, 30 (Fla. 1999), and *Ring v. Arizona*, 536 U.S. 584 (2002). The petition is hereby denied. The State's motion to dismiss is hereby denied as moot."

### GROUND IV

**BASING AN AGGRAVATING CIRCUMSTANCE ON PRIOR CONVICTIONS FOR CRIMINAL ACTIVITY COMMITTED WHEN MR. MOORE WAS FIFTEEN AND SEVENTEEN YEARS OLD VIOLATES THE EIGHTH AND FOURTEEN AMENDMENTS OF THE UNITED STATES CONSTITUTION UNDER *ROPER V. SIMMONS*, 125 S.Ct. 1183 (2005).**

In its case at the penalty phase, the State introduced Mr. Moore's prior convictions for armed robbery and aggravated battery (R14. 1458-59).   After introducing the convictions into evidence, the State called Detective Goff, a detective with the Duval County Sheriff's Office.   Over a defense hearsay objection, the State was permitted to elicit testimony regarding the victim of the armed robbery: "This

26

was a white female, 23 years old, named Cynthia Hyman that was robbed on that date" (R14. 1452). Detective Goff further explained, "Yes, Cynthia Hyman identified Thomas Moore as being the suspect with the pistol" (R14. 1452). In cross-examination, Detective Goff acknowledged that Mr. Moore was 15 years old at the time of the armed robbery[3] and that he was in the company of two others, one who was "a few days younger" than Mr. Moore and another "who was 17" (R14. 1453).

A second prior conviction was presented. This conviction was for an aggravated battery that occurred on January 30, 1991, nearly three months before Mr. Moore's eighteenth birthday.

In closing argument, the State then urged the jury to find the prior violent felony conviction aggravator, arguing, "[t]he defendant has been previously convicted of another capital offense, or of a felony involving the use of threat of violence to some person" (R14. 1525). To support this aggravator, the State relied upon the judgments and sentences it had introduced into evidence. The State pointed out to the jury that the judgment and sentence from

---

[3]Mr. Moore was born on April 20, 1973 (R14. 1468).

the armed robbery revealed that Mr. Moore "was given a chance at that young age to be placed on community control. And that was the sentence for this crime" (R14. 1525).  The State then observed that Mr. Moore "violated that community control" when he was convicted of aggravated assault on April 23, 1991 (R14. 1525).[4]  The State placed emphasis upon the prior convictions as aggravating circumstances, arguing, "Two prior violent felonies committed by this defendant before he was 19 years old.  The legislature says that is aggravation.  That is a reason that you can recommend the death penalty against Thomas Moore" (R14. 1526).

The State relied upon Mr. Moore's acts at the age of fifteen (15) and at the age of seventeen (17) to establish the prior conviction of a crime of violence aggravating circumstance.  The use of prior convictions premised upon acts committed by the defendant when he was under the age of eighteen violates Roper v. Simmons, 125 S.Ct. 1183 (2005), and the Eighth Amendment.

**Exhaustion of Ground IV in state courts:**

**1)    Did you raise Ground IV in the Florida Supreme Court on a direct appeal of your conviction?** No

---

[4]Again, this conviction was for a crime occurring on January 30, 1991, nearly three months before Mr. Moore's eighteenth birthday.

2)  **After your conviction, did you raise Ground IV in the state circuit court that sentenced you by filing a motion under Florida Rule of Criminal Procedure 3.850?** No

    a)  **If your answer is "yes", then state:**
        I.  **Date motion filed:** N/A

        ii. **Whether you received an evidentiary hearing:** N/A

        iii. **Result:** N/A

        iv. **Date of Result:** N/A

    b)  **If your Rule 3.850 Motion was denied, did you file an appeal of that denial with the Supreme Court of Florida?** N/A

        I.  **If you failed to appeal the denial of your Rule 3.850 motion, explain briefly why:** N/A

        ii. **Date appeal filed, result of appeal, date of result:** N/A

3)  **Have you raised Ground IV in any other petition, application, or motion filed in the state courts of Florida?** Yes.  Ground III was raised as Claim IV of Mr. Moore's second petition for a writ of habeas corpus filed in the Florida Supreme Court on May 13, 2004. The court denied the petition on the merits in a summary order issued on December 16, 2004, stating: "Thomas James Moore has filed a petition for writ of habeas corpus, raising claims based on *Delgado v. State*, 776 So. 2d 233 (Fla. 2002), *Crawford v. Washington*, 124 S.Ct. 1354 (2004), *Brennan v. State*, 754 So. 2d 1, 30 (Fla. 1999), and *Ring v. Arizona*, 536 U.S. 584 (2002).  The petition is hereby denied.  The State's motion to dismiss is hereby denied as moot." After the court denied the petition, but while a motion for rehearing was pending, the Supreme Court issued <u>Roper v. Simmons</u>.  Mr. Moore immediately filed a motion seeking an opportunity to submit briefing regarding the

29

impact of <u>Roper v. Simmons</u> on Claim IV.  The Florida
Supreme Court denied the motion "without prejudice to
the issue being raised in a separate proceeding."
<u>Moore v. Crosby</u>, Order dated 3/21/05, Case No. SC04-
834.  Mr. Moore then raised this claim in his third
habeas corpus petition filed in the Florida Supreme
Court on March 23, 2005.  That petition was denied on
October 18, 2005, although a motion for rehearing is
still pending before the Florida Supreme Court.

### GROUND V

**THE PROSECUTOR'S PENALTY PHASE CLOSING
ARGUMENT, WHICH USED MITIGATION EVIDENCE AS
NON-STATUTORY AGGRAVATION, VIOLATED THE
EIGHTH AND FOURTEENTH AMENDMENTS TO THE
UNITED STATES CONSTITUTION.**

During closing argument of the penalty phase, the

prosecutor made the following argument to the jury:

> I would submit to you that the Defense put on a lot of
> mitigation.  They brought in, as I told you, all of the
> wonderful people who had known this defendant his
> entire life, who nurtured him, who loved him, who spent
> holidays with him, who said that he was treated just
> like their son, their brother, their cousin.  That he
> did well in school.  That he played football.  That he
> had a normal life.  And, ladies and gentlemen, it may
> sound like mitigation, but to me it's the most – well,
> I would submit to you that it's the most aggravating
> factor of all.  That he alone –

(T1527).

At this point, defense counsel objected and asked to

approach the bench, but the judge refused to allow it

(T1527).  Defense counsel then asked to voice his objection

at the end of the argument, which the judge allowed (T1527).

The prosecutor continued her argument as follows:

> Ladies and gentlemen, look at these photographs that
> the defense put in.  They show a young man who was
> loved, they show a young man who gave love and got
> love.  It could be mitigation that he was that type of
> person, but I would submit to you that is all the more
> reason that he should not have committed any of these
> crimes; because he did grow up in a decent, loving
> environment ....

(T1527-1528).

Defense counsel again asked to approach the bench, was

denied permission, and reserved his objection to the close

of argument (T1528-1529).  Then, he vigorously objected to

the prosecutor's use of mitigation evidence as an

aggravating factor, and the trial court overruled the

objection (T1549).

**Exhaustion of Ground V in state courts:**

1) **Did you raise Ground V in the Florida Supreme Court on
   a direct appeal of your conviction?** Yes

2) **After your conviction, did you raise Ground V in the
   state circuit court that sentenced you by filing a
   motion under Florida Rule of Criminal Procedure 3.850?**
   No

   a) **If your answer is "yes", then state:**
      **I.  Date motion filed:** N/A

      **ii. Whether you received an evidentiary
          hearing:** N/A

      **iii. Result:** N/A

      **iv. Date of Result:** N/A

31

b)   If your Rule 3.850 Motion was denied, did you file
an appeal of that denial with the Supreme Court of
Florida? N/A

    I.   If you failed to appeal the denial of your
Rule 3.850 motion, explain briefly why: N/A

    ii.  Date appeal filed, result of appeal, date of
result: N/A

3)   **Have you raised Ground V in any other petition,
application, or motion filed in the state courts of
Florida?** Yes.  Ground V was raised in Mr. Moore's first
habeas petition filed in the Florida Supreme Court on
April 2, 2001.  The petition was denied on March 7,
2002, <u>Moore v. State</u>, 820 So. 2d 199 (Fla. 2002), and
rehearing was denied on June 20, 2002.

### GROUND VI

**MR. MOORE WAS DENIED HIS RIGHTS UNDER <u>AKE V.
OKLAHOMA</u> AT THE GUILT AND PENALTY PHASES OF
HIS CAPITAL TRIAL WHEN COUNSEL INEFFECTIVELY
FAILED TO PROVIDE THE NECESSARY BACKGROUND
INFORMATION TO MR. MOORE'S MENTAL HEALTH
CONSULTANT, AND FAILED TO OBTAIN OTHER
NECESSARY EXPERT ASSISTANCE.**

Mr. Moore was entitled to competent expert assistance

at both phases of his capital trial.  Specifically, Mr.

Moore was entitled to a professionally competent, court-

funded evaluation to determine his mental status at the time

of the offense, to determine his mental status at trial, and

to determine whether mitigating circumstances existed in his

case.  Trial counsel had a duty to ensure Mr. Moore received

competent assistance.

Dr. Harry Krop was appointed by the Court to conduct a confidential evaluation of Mr. Moore in connection with this case. Prior to the examination, Dr. Krop was provided with the homicide continuation report of this case, as well as some of Mr. Moore's criminal records, for consideration in evaluating Mr. Moore. Dr. Krop was also provided a **paragraph length** summary of Mr. Moore's "social history" written by Mr. Moore's trial counsel. The purpose of the evaluation, according to Mr. Moore's trial counsel, was "primarily for . . . a penalty phase assessment."

Dr. Krop conducted a psychological evaluation of Mr. Moore on August 19, 1993. The purpose of the evaluation, as Dr. Krop understood it, was "to determine possible mitigating factors related to allegations that he [Mr. Moore] committed First Degree Murder." Dr. Krop concluded that Mr. Moore's history of alcohol and drug abuse "appear to be mitigating factors." Dr. Krop requested that he be able to review all of Mr. Moore's prior criminal records and prison records, including PSIs, as well as current jail records and any available school records to explore additional mitigating factors. Dr. Krop also wanted to review records pertaining to Mr. Moore's father's murder and to interview family members to obtain additional background

33

information to further supplement and have a complete and accurate evaluation. Apparently, Dr. Krop was never provided these things, and no further evaluation was performed.

The evaluation performed by Dr. Krop on Mr. Moore was incomplete and unreliable and failed to comport with due process in several ways: 1) the evaluation was based on a reported social history that was incomplete and unreliable; 2) the evaluation failed to take into account Mr. Moore's medical history, which would have revealed that Mr. Moore suffered symptoms consistent with toxic chemical exposure; 3) the evaluation failed to take into account Mr. Moore's medical history, which would have revealed that Mr. Moore suffered various types of head trauma; and 4) the evaluation was performed for purposes of mitigation only, when a competent evaluation would have revealed issues related to the guilt phase of trial.

Trial counsel failed to obtain the assistance of other experts necessary to ensure a reliable fact-finding process. During Mr. Moore's trial, the State presented a fire expert to testify regarding the fire that had occurred in the victim's house after the murder had occurred. However, evidence and records in the defense attorney's possession

contradicted much of this expert's testimony.  Trial counsel did not effectively expose these inconsistencies to the jury.  More importantly, trial counsel failed to retain a fire expert to review these inconsistencies and present testimony to rebut the State's fire expert.  Mr. Moore was prejudiced by this deficiency because the inconsistencies were relevant to many aspects of the State's case:  1) the times certain events occurred, as testified to by several State witnesses; 2) the inconsistent testimony of co-defendant Clemons; and 3) other witness testimony.  Because of trial counsel's deficiency, the jury was unable to make reliable findings of fact.

The State also presented the testimony of medical examiner Dr. Bonifacio Floro.  Dr. Floro testified regarding, among other things, bullet trajectories and the manner in which the victim died.  However, evidence and records in the defense attorney's possession contradicted much of this expert's testimony.  Trial counsel was ineffective in failing to expose these contradictions during Dr. Floro's testimony, contradictions which cast serious doubt on the factual story presented to the jury by the State.  Furthermore, trial counsel was ineffective for not retaining an independent medical examiner who could provide

a professionally trained opinion to the jury regarding the
relevance of these contradictions to Mr. Moore's defense.
Again, because of trial counsel's deficiency, the jury was
unable to make reliable findings of fact.

Mr. Moore's trial counsel also had in his possession
evidence and records which indicated Mr. Moore, on the day
of the incident, was functioning with serious mental
deficiencies due to the consumption of various drugs.  Trial
counsel was deficient for not retaining the services of a
pharmacologist or other qualified expert to testify to the
effects of these various drugs, especially after the one
expert retained by the defense informed counsel of the
mitigating value of this information.  Furthermore, had
counsel sufficiently investigated, he would have discovered
that Mr. Moore was using large amounts of cocaine on the day
in question right up to the time of the incident.  Mr.
Moore's postconviction counsel located witnesses who could
testify to this, some of whom were known to defense counsel
at the time of the trial.  This fact further compounds trial
counsel's ineffectiveness for not obtaining a qualified
drug-use expert.

**Exhaustion of Ground VI in state court:**

1)   **Did you raise Ground VI in the Florida Supreme Court on a direct appeal of your conviction?**  No

2)   **After your conviction did you raise Ground VI in the state circuit court that sentenced you by filing a motion under Florida Rule of Criminal Procedure 3.850?** Yes

   **a) If your answer is "yes", then state:**

   **i.  Date motion filed:** 3/26/99; amended 6/22/99, 9/20/99 and 4/06/00.

   **ii.  Whether you received an evidentiary hearing:** No

   **iii. Result:** Summary denial

   **iv.  Date of Result:** 8/04/00; rehearing denied 9/08/00.

   **b)  If your Rule 3.850 Motion was denied, did you file an appeal of that denial with the Supreme Court of Florida?** Yes

   **i.  If you failed to appeal denial of your Rule 3.850 motion, explain briefly:** N/A

   **ii.  Date appeal filed, result of appeal, and date of result:** Notice of appeal filed on 4/02/01; relief denied 3-07-02, <u>Moore v. State</u>, 820 So. 2d 199 (Fla. 2002); rehearing denied 6/20/02.

3)   **Have you raised ground VI in any other petition, application, or motion filed with the state courts of Florida?** No

**GROUND VII**

   **MR. MOORE WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL AT THE SENTENCING PHASE OF HIS TRIAL IN VIOLATION OF THE SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS.**

37

Mr. Moore's counsel failed to fully investigate and develop crucial evidence in mitigation.  This substantial and compelling mitigating evidence was easily available and accessible to trial counsel, but was not investigated and prepared for presentation to either the jury or the judge. As a result, Mr. Moore was sentenced to death by a judge and jury who heard little of the available mitigation that was essential to an individualized capital sentencing determination.

Had defense counsel adequately investigated and prepared, he could have presented and argued to the jury a wealth of statutory and non-statutory mitigating factors. Thomas Moore was sentenced to die by a judge and jury who knew very little about him.  Mitigating evidence was available to demonstrate that the rosy picture of Thomas Moore's childhood and upbringing presented by defense counsel was far from the horrid reality that Mr. Moore lived with.  Instead, Mr. Moore's upbringing was filled with degrading and senseless violence.  Mr. Moore's childhood was filled with despair over the loss of a father who he barely knew.  He constantly looked to the streets for a replacement which inevitably led to trouble he was too young to prevent.

Mr. Moore can present this compelling evidence if granted an evidentiary hearing.

Mr. Moore was exposed to harmful and potentially deadly hazardous waste in and around his neighborhood while growing up. Several neighborhoods within Jacksonville were built on incinerator ash that tests show contains arsenic, lead, and cancer-causing dioxin.[5] One of these sites is less than a mile from the house where Mr. Moore was raised.

While growing up, Mr. Moore suffered from repeated migraine headaches and month-long bouts of vomiting. These frequently occurring conditions suffered by Mr. Moore are symptomatic of chronic exposure to lead. Mr. Moore's exposure to lead was of such an extent that it adversely affected Mr. Moore's learning ability, damaged his nervous system, and caused serious problems with his metabolism. Mr. Moore's expert(s) will testify that these adverse conditions affected the proper functioning of Mr. Moore's brain before, during, and after the time of this incident, in that his capacity for reflection and\or premeditated thought was severely diminished.

---

[5]The Florida Times-Union,"City dumped toxins on 4 neighborhoods", July 27, 1999.

Mitigating evidence regarding Mr. Moore's history of substance abuse, his extreme level of intoxication the day of the crime, and the effect this substance abuse had on his mental state leading up to the day of the crime, as well as on the day of the crime, was also readily available and should have been presented to inform the judge and jury. During the penalty phase, Mr. Moore's trial counsel completely failed to use plentiful and available evidence of Mr. Moore's serious substance abuse problem, as well as his extreme level of intoxication at the time of the offense. Much of this evidence was already in trial counsel's possession.  Had trial counsel investigated further, he would have found even more evidence.  There is no tactical reason that can excuse this failure on trial counsel's part.

Had it been presented, this evidence would have: 1) negated or weakened the aggravating factors the jury considered and the trial court found; 2) provided statutory mitigators[6] to present and argue to the jury; and, 3) supplied a wealth of nonstatutory mitigation for the judge and jury to consider.  Expert testimony available then (as

---

[6] See, Florida Statutes, section 921.141 (6)(b) and (6)(f).  It is also important to note that trial counsel did not request that the jury be instructed on these statutory mitigators.

40

well as now) could explain the physical and psychological damage of Mr. Moore's substance abuse.  Furthermore, expert testimony was (and is) available to explain how Mr. Moore's extremely intoxicated state the day of the murder created an extreme mental disturbance in his mind, and substantially impaired Mr. Moore's capacity to appreciate the criminality of his conduct and conform his conduct to the requirements of the law.

Counsel failed to investigate and that failure deprived Mr. Moore of having an informed jury sentence him.  Although the record did not conclusively demonstrate that Mr. Moore was not entitled to relief, Mr. Moore was never given the opportunity to present this information at an evidentiary hearing in the state courts.

**Exhaustion of Ground VII in the state courts:**

1) **Did you raise Ground VII in the Florida Supreme Court on a direct appeal of your conviction?**  No

2) **After your conviction did you raise Ground VII in the state circuit court that sentenced you by filing a motion under Florida Rule of Criminal Procedure 3.850?**  Yes

   a) **If your answer is "Yes", then state:**

      i. **Date motion filed:** 3/26/99; amended 6/22/99, 9/20/99 and 4/06/00.

      ii. **Whether you received an evidentiary hearing:** No

41

    **iii. Result:** Summary denial

    **iv. Date of Result:** 8/04/00; rehearing denied 9/08/00.

**b)**    **If your Rule 3.850 Motion was denied, did you file an appeal of that denial with the Supreme Court of Florida?** Yes

    **i. If you failed to appeal the denial of your Rule 3.850 motion, explain briefly why:** N/A

    **ii. Date appeal filed, result of appeal, and date of result:** Notice of appeal filed on 4/02/01; relief denied; 3-07-02, <u>Moore v. State</u>, 820 So. 2d 199 (Fla.2002); rehearing denied 6/20/02.

**3)**   **Have you raised Ground VII in any other petition, application, or motion filed in the state courts of Florida?** No

### GROUND VIII

**MR. MOORE WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL PRETRIAL AND AT THE GUILT/INNOCENCE PHASE OF HIS TRIAL IN VIOLATION OF THE FIFTH, SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS.**

During trial, Mr. Moore's trial counsel completely failed to use plentiful and available evidence of Mr. Moore's intoxication at the time of the offense, and failed to properly investigate and discover evidence existing at the time of trial which could prove that Mr. Moore's level of intoxication was much greater than trial counsel thought. Counsel could have used this evidence in a number of significant ways both at trial and sentencing but instead

42

counsel ignored this area.  Counsel failed to develop a defense of voluntary intoxication, and failed to request a jury instruction on the issue.  Evidence of intoxication would also have served to establish statutory and nonstatutory mitigation.

Voluntary intoxication could have been employed as a defense to Mr. Moore's first-degree murder charge and could have rebutted the necessary element of premeditation. Furthermore, voluntary intoxication could have been employed as a defense to the other charges Mr. Moore was facing.

In the face of substantial and compelling evidence of intoxication and inability to form the requisite level of specific intent, defense counsel failed to adequately voir dire the jurors regarding mental health or intoxication issues.  Not one question was asked about the jurors' feelings about their perceptions of mental health issues as viable defenses in a criminal case.  Not one question was asked about the jurors' understanding of the concept that intoxication can negate the specific intent required for a finding of first-degree murder.  Not one question was asked about the jurors' understanding or feelings about mental health issues and intoxication relating to mitigating circumstances.  No questions were asked to jurors regarding

their attitudes and biases towards substance abuse and addiction.   This is prejudicially deficient performance. The failure to even ask one question in this area falls below reasonably professional standards.   No adversarial testing occurred.

Substantial and valuable lay testimony as to Mr. Moore's intoxication was available at the time of trial. This important evidence was not developed for the jury or for consideration by a mental health expert.   Although the record did not conclusively demonstrate that Mr. Moore was not entitled to relief, Mr. Moore was never given the opportunity to present this information at an evidentiary hearing in the state courts.

**Exhaustion of Ground VIII in the state courts:**

1) **Did you raise Ground VIII in the Florida Supreme Court on a direct appeal of your conviction?**  No

2) **After your conviction did you raise Ground VIII in the state circuit court that sentenced you by filing a motion under Florida Rule of Criminal Procedure 3.850?** Yes

    a) **If your answer is "Yes", then state:**

        i. **Date motion filed:** 3/26/99; amended 6/22/99, 9/20/99 and 4/06/00.
        ii. **Whether you received an evidentiary hearing:** No

        iii. **Result:** Summary denial

44

    **iv. Date of Result:** 8/04/00; rehearing denied 9/08/00.

**b)**    **If your Rule 3.850 Motion was denied, did you file an appeal of that denial with the Supreme Court of Florida?** Yes

    **i. If you failed to appeal the denial of your Rule 3.850 motion, explain briefly why:** N/A

    **ii. Date appeal filed, result of appeal, and date of result:** Affirmed, 3-07-02, <u>Moore v. State</u>, 820 So. 2d 199 (Fla. 2002); rehearing denied 6/20/02.

**3)**    **Have you raised Ground VIII in any other petition, application, or motion filed in the state courts of Florida?** No

### GROUND IX

**UNCHALLENGED PROSECUTORIAL ARGUMENT DURING MR. MOORE'S TRIAL AND SENTENCING PROCEEDINGS VIOLATED THE SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION. DEFENSE COUNSEL'S FAILURE TO OBJECT TO THESE BLATANTLY IMPROPER COMMENTS CONSTITUTED INEFFECTIVE ASSISTANCE OF COUNSEL.**

During the State's guilt-phase rebuttal argument, the prosecutor improperly and prejudicially referred to Mr. Moore as "the devil" (T. 1262). The exact statement went as follows:

> Crime conceived in hell will not have any angels as witnesses. And, ladies and gentleman, as true as that statement is, Grand Park is hell. **And that man right there is the devil.**

(T. 1262) (emphasis added). The State continued: