UNITED STATES DISTRICT COURT,
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

THOMAS JAMES MOORE,

    Petitioner,

V.                                                 CASE NO.: 3:06-cv-127-J-34

SECRETARY, FLORIDA DEPARTMENT
OF CORRECTIONS,

    Respondent.
_____/

## PETITIONER'S RESPONSE TO ORDER

**COMES NOW** the Petitioner, **THOMAS JAMES MOORE**, by and through undersigned counsel and respectfully responds to the Order that this Court issued on May 31, 2017.

1. On May 16, 2017, this Court issued an order indicating that the above-entitled matter it would be lifting the stay that had been entered while the Florida Supreme Court in various cases was considering the impact of the United States Supreme Court decision in *Hurst v. Florida*, 136 S. Ct. 616 (2016). The order then directed the parties to "advise the Court how the case should proceed."

2. In the May 16th order, this Court referenced three recent decisions from the Florida Supreme Court that addressed *Hurst v. Florida*. Those three

1

decisions were *Lambrix v. State*, 217 So. 3d 977 (Fla. 2017); *Asay v. State*, 210 So. 3d 1 (Fla. 2016); and *Hurst v. State*, 202 So. 3d 40 (Fla. 2016). This Court noted that when it stayed the proceedings in the above-entitled, it was on the basis of the pendency of these three specific cases before the Florida Supreme Court.

3. While it is true that the pendency of the appeals in *Lambrix*, *Asay*, and *Hurst v. State*, was the basis for this Court's stay, the decisions have not fully resolved the landscape of Florida capital sentencing law following the tectonic shift brought about by *Hurst v. Florida*. The best evidence of the fact Florida capital law is still in a state of flux are the recent stays of capital collateral appeals pending in the Florida Supreme Court.

4. Beginning on June 5, 2017, the Florida Supreme Court began issuing stays in pending appeals from the denial of successive 3.851 motions by defendants whose death sentences were final prior to June 24, 2002, the day that *Ring v. Arizona*, 536 U.S. 584 (2002).[1] One of the first cases in which the Florida

---

[1]The State of Florida filed a petition for a writ of certiorari in the United States Supreme Court challenging the Florida Supreme Court's decision in *Hurst v. State*, 202 So. 3d 40 (Fla. 2016). On May 22, 2017, the US Supreme Court denied the petition. *Florida v. Hurst*, 137 S. Ct. 2161 (2017). Subsequently, one Florida Supreme Court justice who had expressed disagreement with the ruling in *Hurst v. State,* announced that given the US Supreme Court's denial of review, he believed that he was now bound by the decision and obligated to follow it. *See Okafor v. State*, _ So. 3d _, 2017 WL 2481266 *6 (Fla. June 8, 2017) (Lawson, J., concurring specially) ("I concur in the decision to grant Hurst relief because that is

2

Supreme Court issued a stay of appellate proceedings was in *Mungin v. State*, FSC Case No. SC17-815. The June 5th stay in *Mungin* stated: "This appeal is stayed pending disposition of *Hitchcock v. State*, SC17-445." Other capital collateral appeals stayed during the week of June 5th pending disposition of *Hitchcock v. State* included: *Blanco v. State*, FSC Case No. SC17-330 (Stay Order dated June 6, 2017); *Jones v. State*, FSC Case No. SC17-497 (Stay Order dated June 5, 2017); *Alston v. State*, FSC Case No. SC17-499 (Stay Order dated June 8, 2017); *Jennings v. State*, FSC Case No. SC17-500 (Stay Order dated June 6, 2017); *Puiatti v. State*, FSC Case No. SC17-552 (Stay Order dated June 5, 2017); *Beasley v. State*, FSC Case No. SC17-566 (Stay Order dated June 5, 2017); *Clark v. State*, FSC Case No. SC17-587 (Stay Order dated June 6, 2017); *Lucas v. State*, FSC Case No. SC17-598 (Stay Order dated June 5, 2017); *Peterka v. State*, FSC Case No. SC17-593 (Stay Order dated June 8, 2017); *Rhodes v. State*, FSC Case No. SC17-628 (Stay Order dated June 5, 2017); *Burns v. State*, FSC Case No. SC17-726 (Stay Order dated June 5, 2017); *Cole v. State*, FSC Case No. SC17-737 (Stay Order dated June 6, 2017); *Harvey v. State*, FSC Case No. SC17-790 (Stay Order

---

what a faithful application of now-settled Florida law requires in this case.").

dated June 5, 2017); *Kokal v. State*, FSC Case No. SC17-807 (Stay Order dated June 5, 2017); *Thomas v. State*, FSC Case No. SC17-809 (Stay Order dated June 6, 2017); *Taylor v. State*, FSC Case No. SC17-818 (Stay Order dated June 6, 2017); *Stephens v. State*, FSC Case No. SC17-820 (Stay Order dated June 5, 2017); *Kelley v. State*, FSC Case No. SC17-830 (Stay Order dated June 7, 2017); *Lightbourne v. State*, FSC Case No. SC17-837 (Stay Order dated June 7, 2017); *Dillbeck v. State*, FSC Case No. SC17-847 Stay Order dated June 5, 2017); *Bates v. State*, FSC Case No. 17-850 (Stay Order dated June 6, 2017); *Ford v. State*, FSC Case No. SC17-859 (Stay Order dated June 8, 2017); *Marquard v. State*, FSC Case No. SC17-862 (Stay Order dated June 5, 2017); *Evans v. State*, FSC Case No. SC17-869 (Stay Order dated June 6, 2017); *Morris v. State*, FSC Case No. SC17-873 (Stay Order dated June 7, 2017); *Rose v. State*, FSC Case No. SC17-878 (Stay Order dated June 8, 2017); *Anderson v. State*, FSC Case No. SC17-884 (Stay Order dated June 6, 2017); *Stewart v. State*, FSC Case No. SC17-889 (Stay Order dated June 6, 2017); *Trepal v. State*, FSC Case No. SC17-892 (Stay Order dated June 7, 2017); *Reed v. State*, FSC Case No. SC17-896 (Stay Order dated June 6, 2017); *Hartley v. State*, FSC Case No. SC17-899 (Stay Order dated June 5, 2017); *Windom v. State*, FSC Case No. SC17-902 (Stay Order dated June 7, 2017); *Gudinas v. State*, FSC Case No. SC17-919 (Stay Order dated June 8, 2017);

*Jeffries v. State*, FSC Case No. SC17-920 (Stay Order dated June 8, 2017); *Atwater v. State*, FSC Case No. SC17-926 (Stay Order dated June 5, 2017); *Sochor v. State*, FSC Case No. SC17-929 (Stay Order dated June 7, 2017); *Jennings v. State*, FSC Case No. SC17-938 (Stay Order dated June 5, 2017); *Nelson v. State*, FSC Case No. SC17-939 (Stay Order dated June 6, 2017); *Long v. State*, FSC Case No. SC17-942 (Stay Order dated June 6, 2017); *Rogers v. State*, FSC Case No.SC17-945 (Stay Order dated June 6, 2017); *Trotter v. State*; FSC Case No. SC17-950 (Stay Order dated June 5, 2017); *Fotopoulos v. State*, FSC Case No. SC17- 971 (Stay Order dated June 6, 2017); *Phillips v. State*, FSC Case No. SC17-984 (Stay Order dated June 7, 2017); *Finney v. State*, FSC Case No. SC17-985 (Stay Order dated June 6, 2017); *Brown v. State*, FSC Case No. SC17-1001 (Stay Order dated June 6, 2017); *Pace v. State*, FSC Case No. SC17-1021(Stay Order dated June 7, 2017); *Bell v. State*, FSC Case No. SC17-1045 (Stay Order dated June 7, 2017). The appellant in each of these 47 cases had raised claims under *Hurst v. Florida* and/or *Hurst v. State* in the context of a death sentence that was final before June 24, 2002.

5. In the weeks that followed, additional *Hitchcock* stays continued to be issued by the Florida Supreme Court. On July 13, 2017, a stay pending the disposition of *Hitchcock v. State* was issued in *Sireci v. State*, FSC Case No.

5

SC17-1143. The Florida Supreme Court has even issued a stay in habeas proceedings in which it had denied habeas relief on a *Hurst v. Florida/Hurst v. State* claim, and all that was pending before the court was a motion for rehearing filed by the petitioner. *See Archer v. Jones*, FSC Case No. SC16-2111 (Stay Order dated June 29, 2017.

6. The briefing in *Hitchcock v. State* was completed on July 3, 2017, when Mr. Hitchcock's reply brief was filed in the Florida Supreme Court. It is clear from an examination of the briefs in *Hitchcock v. State* that the retroactivity of *Hurst v. Florida* and *Hurst v. State* are at issue. The briefing also includes a claim that limiting retroactivity of *Hurst v. Florida* to June 24, 2002, was arbitrary within the meaning of the Eighth Amendment and cannot stand.

7. Under *Hurst v. State*, a capital defendant is not eligible for a death sentence unless convicted of capital first degree murder, i.e. a first degree murder conviction plus a jury's unanimous death recommendation. Only after both a first degree murder conviction and a unanimous jury's death recommendation are returned is a judge authorized to impose a death sentence. Id. at 59 ("the penalty phase jury must be unanimous in making the critical findings and recommendation that are necessary before a sentence of death may be considered by the judge or imposed."). Quite simply and quite clearly, the right to a life sentence unless a jury

**unanimously** returns a death recommendation arises from the Florida Constitution, not the Sixth Amendment, and not from *Hurst v. Florida*. The Florida Supreme rested the jury unanimity requirement upon the special need for reliability when the decision is made to impose a death sentence.

8. In holding that the jury must unanimously vote in favor of a death recommendation before a death sentence was authorized, the Florida Supreme Court found that requiring unanimity would enhance the reliability of any resulting death sentences. *Hurst v. State*, 202 So. 3d at 59 ("We also note that the requirement of unanimity in capital jury findings will help to ensure the heightened level of protection necessary for a defendant who stands to lose his life as a penalty."). *See Johnson v. Mississippi*, 486 U.S. 578, 584 (1988) ("The fundamental respect for humanity underlying the Eighth Amendment's prohibition against cruel and unusual punishment gives rise to a special 'need for reliability in the determination that death is the appropriate punishment' in any capital case.").

9. The Florida Supreme Court's determination that death sentences are inherently less reliable when they are imposed without the jury's unanimous consent means that carrying out those less reliable death sentence is contrary to Eighth Amendment jurisprudence. *Woodson v. North Carolina*, 428 U.S. 280, 305 (1976) ("Death, in its finality, differs more from life imprisonment than a 100-year

prison term differs from one of only a year or two. Because of that qualitative difference, there is a corresponding difference in the need for reliability in the determination that death is the appropriate punishment in a specific case."); *Lockett v. Ohio*, 438 U.S. 586, 604 (1978) ("We are satisfied that this qualitative difference between death and other penalties calls for a greater degree of reliability when the death sentence is imposed. ").

10. In *Hurst v. State*, the Florida Supreme Court recognized that death sentences imposed without the unanimous support of a jury lacked the reliability a unanimous death recommendation would bring. The Florida Supreme Court explained this aspect in *Hurst v. State* in its subsequent decision in *Bevel v. State*:

> After our more recent decision in *Hurst*, 202 So. 3d 40, where we determined that **a reliable penalty phase proceeding requires** that "the penalty phase jury must be unanimous in making the critical findings and recommendation that are necessary before a sentence of death may be considered by the judge or imposed," 202 So. 3d at 59, we must consider whether the unpresented mitigation evidence would have swayed one juror to make "a critical difference." *Phillips*, 608 So. 2d at 783.

*Bevel v. State*, _ So. 3d _, 2017 WL 2590702 at *10 (June 15, 2017) (emphasis added). In light of this language in *Bevel v. State*, carrying out executions in case in which the jury did not unanimously consent to a death sentence is problematic. The Florida Supreme Court in *Bevel* indicated that such death sentences are

8

unreliable, or at least significant less reliable that death sentences in which the jury returned a unanimous death recommendation. *Bevel* and the *Hitchcock* stay in *Archer v. Jones* clearly demonstrates that the retroactivity of *Hurst v. State* remains unresolved by the Florida Supreme Court.[2]

11.     On March 13, 2017, Chapter 2017-1 was enacted. As a result, § 921.141 now provides that a defendant convicted of first degree murder is entitled to a life sentence unless a jury returns a unanimous death recommendation. Just as a criminal defendants who is charged with a crime is entitled to a presumption of innocence until a jury returns a unanimous guilty verdict, a defendant convicted of first degree murder is entitled to a presumption of a life sentence until a jury returns a unanimous death recommendation.  The legislative intent was clear. The changes made in Chapter  2017-1 were meant to apply retrospectively. Certainly, the legislature could have provided that the right to a life sentence unless the jury unanimously voted to recommend a death sentence only applied in homicide cases in which the homicide was committed after the right was enacted. But, that was

---

[2]Because *Hurst v. State* does not involve the Sixth Amendment and does not arise from the Sixth Amendment right at issue in *Ring v. Arizona*, the decision in *Schriro v. Summerlin*, 542 U.S. 348 (2004) is not relevant to any discussion of the substantive right to a unanimous death recommendation, particularly in light of the enhanced reliability that will result from jury unanimity as explained in *Hurst v. State*.

not the legislative intent. Instead, the legislature intended this right to a life sentence unless the jury unanimously voted to recommend a death sentence to be extended retrospectively to any defendant charged with a capital homicide that had occurred prior to the enactment of the right. The legislative intent is clear.

12. Chapter 2017-1 had not been enacted at the time that the Florida Supreme Court issued its opinions in *Asay v. State* or *Lambrix v. State*. The retrospective legislation certainly strengthens the argument that *Hurst v. State* must be fully retroactive. Until there is a decision in *Hitchcock v. State*, the issue remains unresolved.

13. Resolution of these issues will also affect how the prejudice prong analysis under *Strickland v. Washington* is conducted. This was explained in *Bevel v. State*, _ So. 3d _, 2017 WL 2590702 (Fla. June 15, 2017). There, the Florida Supreme Court found that the decision in *Hurst v. State* mandating a unanimous death recommendation before the presumption of a life sentence is overcome altered how the prejudice analysis of *Brady/Giglio* claims and *Strickland* is to be applied. Under *Bevel*, this Court's standard of review for harmless error must also adjust. It no longer takes six jurors voting for a life recommendation for an advisory life recommendation to result. Now, one juror voting for life means a life sentence is the only sentence to be imposed for a first degree murder conviction.

10

14. Besides the question of whether Mr. Moore has state remedies available that he can pursue, the Florida Supreme Court still has issues of Florida law to resolve that will affect this Court's consideration of Mr. Moore's habeas petition. Florida's capital sentencing law has been completely rewritten, and Florida's capital jurisprudence has been shredded.

15. Mr. Moore's petition includes an exhausted *Ring* claim. In addition, there is a claim premised upon the use of a juvenile conviction to establish an aggravator, which is now an element of the offense of capital first degree murder. As a result of *Hurst v. Florida* and *Hurst v. State*, the use of a juvenile conviction becomes more problematic under *Roper v. Simmons*, 543 U.S. 551 (2005). Mr. Moore is also challenging whether the jury instructions at the penalty phase comported with the Eighth Amendment. The retroactivity of *Hurst v. State* and the retrospective new statute both may impact Mr. Moore's challenge to the State's presentation of hearsay at the penalty phase which deprived Mr, Moore of the opportunity to confront the declarant. The standard of review on Mr. Moore's *Strickland* and *Brady* claims will be affected. How many jurors must favor a life sentence in order for a life sentence to result is a question that must be resolved before the prejudice prong of *Strickland* or the materiality prong of *Brady* can be applied and analyzed.

16. Because so much remains unresolved and is currently pending in the Florida Supreme Court, Mr. Moore argues that this Court should reinstated the stay pending the Florida Supreme Court's disposition of *Hitchcock v. State* and the state of the Florida capital sentencing law becomes clearer.

17. In the event that this Court decides to not reinstate the stay, this Court must allow Mr. Moore to prepare and submit a reply to the State's answer to the petition. Mr. Moore should also be given the opportunity to brief all of the new law that has developed in the past two years. In that regard, this Court should consider that Mr. Moore's counsel is also counsel for Mr. Asay who current is scheduled for execution on August 24, 2017. The warrant litigation in Mr. Asay's case may consume much of counsel's time and ability to prepare and submit a reply and/or brief the considerable jurisprudence and its impact on the issues presented by Mr. Moore's petition.

WHEREFORE, Petitioner requests that this Court reinstate the stay pending the disposition of *Hitchcock v. State*.

Dated and served this 14th day of July, 2017.

> Respectfully submitted,
>
> *Martin J. McClain*
> _____
> Martin J. McClain

Fla. Bar No. 0754773
McClain & McDermott, P.A.
Attorneys at Law
141 N.E. 30th Street
Wilton Manors, FL 33334
(305) 984-8344
fax (954) 564-5412
[martymcclain@earthlink.net](martymcclain@earthlink.net)

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing motion has been furnished to Christina Z. Pacheco, Ass't Attorney General ([christina.pacheco@myfloridalegal.com](christina.pacheco@myfloridalegal.com)), this 14th day of July, 2017, using the CM/ECF system.

*Martin J. McClain*
_____
MARTIN J. MCCLAIN