[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 22-14207

_____

THOMAS JAMES MOORE,

　　　　　　　　　　　　　　Petitioner-Appellant,

*versus*

SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS,
ATTORNEY GENERAL, STATE OF FLORIDA,

　　　　　　　　　　　　　　Respondents-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 3:06-cv-00127-MMH

_____

Before WILLIAM PRYOR, Chief Judge, and NEWSOM and ABUDU, Circuit Judges.

PER CURIAM:

Petitioner Thomas James Moore, who was sentenced to death in a Florida state court for killing Johnny Parrish, appeals the district court's denial of his 28 U.S.C. § 2254 petition for a writ of habeas corpus. We granted Moore a certificate of appealability ("COA") on one issue: whether the State of Florida presented false testimony, in violation of *Giglio v. United States*, 405 U.S. 150 (1972), from witness Vincent Gaines at trial. After a thorough review of the record and with the benefit of oral argument, we affirm the district court's denial of Moore's habeas petition.

## I.    BACKGROUND

### A. The Facts of Conviction and Moore's Trial

The Supreme Court of Florida set forth the facts of the case as follows:

> Moore was convicted of robbing and killing Johnny Parrish—an adult resident of his neighborhood—and burning down Parrish's house. The two were friends, and Moore occasionally visited Parrish's home. On January 21, 1993, at about 3 p.m., Moore sat outside Parrish's house drinking with the victim. Moore claim[ed] that two other youths, Clemons and Gaines, approached the house. Moore claimed he saw the pair chase a neighborhood youth named "Little Terry" with a gun earlier that day, but Clemons denied it at trial. Clemons and Gaines testified that they

had a conversation with Moore about robbing Parrish. Clemons said he agreed to go in the house with Moore, and Gaines was to be the lookout. Gaines said he stood outside but did not see either man go in. He said he heard two shots and then saw Clemons come out of the house and go back in. When Gaines started to walk away, Clemons caught up with him and told him Moore had shot Parrish.

Clemons said that when he and Moore went into the house, Moore pulled out a gun. Moore asked Parrish where his money was and then shot him when he got no response. Later, neighbors saw smoke in Parrish's house and ran in and pulled out Parrish. Parrish was already dead when exposed to the fire, and a fire investigator, Captain Mattox, said that there were two separate fires in the house, both of which were intentionally set.

A witness named Shorter testified that Moore brought him a bag of clothes and asked him to burn them. Shorter also testified that Moore told him he had shot Parrish and set fire to the house. Shorter stated that Moore said he shot Parrish twice, that Clemons ran out of the house, and that Moore took the top off a lawn mower he found and set it on fire to clean the house of fingerprints. Shorter did not call the police but did call his mother, who called the police.

A jail inmate, Jackson, testified that Moore told him that he did not mean to kill Parrish but had to because

4                    Opinion of the Court                    22-14207

> Parrish would recognize him.   Another neighbor,
> Dean, testified that Moore asked him to rob Parrish.

*Moore v. State*, 701 So. 2d 545, 547 (Fla. 1997) (*"Moore I"*).

In addition to the testimony described above, Gaines also testified as a witness for the State.  On cross examination, Gaines testified that he and Clemons were best friends.  Defense counsel then questioned him about the day of the murder.  Gaines admitted to lying to his mother about attending school that day.  Instead, he went to his aunt's house to go back to sleep; woke up around noon; went outside and hung out with some neighborhood boys; and went back home around 3:00 pm to check in with his mother.  Gaines remembered specific details about the day as well, including speaking to Clemons's brother for a while and where other neighborhood teenagers were when Moore asked him to participate in the robbery.  As to chasing Little Terry, Gaines specifically denied seeing Clemons with a chrome-plated .38 caliber gun, and when asked whether he had seen Little Terry at all on the day of the murder, Gaines stated, "[n]ot that I can remember."

Moore disputed the State's evidence regarding his guilt, and he testified in his own defense that he did not kill Parrish.  Moore further explained that he saw Clemons chase Little Terry with a gun the day of the murder.  Moore called Little Terry as a witness as well, who confirmed that Clemons and Gaines had confronted him the day of the murder.  Little Terry stated that one of them reached for a gun before he was able to run away, but he did not identify whether it was Clemons or Gaines who had the gun.

After the State and Moore both rested their cases, the parties moved to closing arguments. Moore's closing argument advanced his theory of defense: Gaines and Clemons were liars, they were chasing Little Terry with a gun the day of the murder, and Clemons—the only person who had a gun on him that day—was the one who robbed and shot Parrish. After jury deliberations, the jury returned a guilty verdict on all counts. Specifically, as to the murder charge, the jury returned a general verdict, finding Moore guilty of first-degree murder with a firearm.

Ultimately, the jury recommended that Moore be sentenced to death for the murder charge. Following a sentencing hearing, the trial court adopted the jury's recommendation and Moore received the death penalty.

### B.  Procedural History

Moore filed a direct appeal and raised various claims for relief. The Supreme Court of Florida affirmed Moore's conviction and sentence. *Moore I*, 701 So. 2d at 547. Moore petitioned the United States Supreme Court for a writ of certiorari, which the U.S. Supreme Court denied on April 20, 1998. *Moore v. Florida*, 523 U.S. 1083 (1998). Moore subsequently filed three post-conviction motions, but only the third one is relevant to his instant appeal. On January 27, 2006, Moore filed his third post-conviction motion. In his motion, Moore argued that he had discovered new evidence regarding statements Gaines and Clemons had made to others while in juvenile detention that established Moore's innocence.

6                    Opinion of the Court                    22-14207

On March 22, 2011, the state post-conviction court conducted an evidentiary hearing on Moore's newly-discovered evidence claim. Moore called several witnesses who testified that they were incarcerated with Clemons and Gaines, and that Clemons and Gaines made statements to them indicating that Moore had not been involved in Parrish's murder.

The State called Gaines, who maintained that he testified truthfully at trial, and he denied ever telling anyone that Moore was innocent. On cross-examination, Gaines admitted that years after the trial, he had told a defense investigator that he and Clemons chased Little Terry, but he still insisted that they did not have a gun. When asked if the chase was the same day as the murder, Gaines testified, "I can't recall."

Following the evidentiary hearing, on April 6, 2011, Moore moved to amend his third post-conviction motion to add the *Giglio* claim that gives rise to the instant § 2254 petition based on Gaines's state post-conviction evidentiary hearing testimony with respect to the Little Terry chase. Moore argued that Gaines's post-conviction testimony revealed that he had been lying at trial about the Little Terry incident. The state post-conviction court ultimately denied his third post-conviction motion, including this claim. After appeal, the Supreme Court of Florida affirmed. *Moore v. State*, 132 So. 3d 718, 721 (Fla. 2013) ("*Moore III*").

As relevant to this appeal, the Supreme Court of Florida ruled that Moore had failed to establish a *Giglio* violation because Moore had not shown that Gaines's trial testimony was false. *Id.*

22-14207                    Opinion of the Court                          7

at 727.  Moore could not make such a showing because the testimony at trial demonstrated that the evidence was in dispute as to whether Clemons or Gaines saw Little Terry on the day of the murder.  *Id.* at 726-27.  In addition, at the state post-conviction evidentiary hearing, Gaines testified that he and Clemons chased Little Terry, but still could not recall whether this occurred on the day of the murder.  *Id.* at 727.  Thus, Moore had not established falsity. *Id.*  The Supreme Court of Florida also concluded that Moore failed to establish that the State knew that the testimony was false.  *Id.* at 726-27.  It did not address whether Gaines's testimony would have been material.  *See generally id.*

On September 17, 2014, Moore filed the instant amended § 2254 petition raising a number of claims, including his *Giglio* claim, and on September 9, 2022, the district court denied the petition.  It found Moore's habeas petition, as a whole, was time-barred,[1] but it addressed the merits of his claims.  As to his *Giglio* claim, the district court found the Supreme Court of Florida's determination was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  It reasoned that Gaines's trial testimony was not false because his evidentiary hearing testimony did not materially contradict his trial testimony.  It also denied the issuance of a COA.  Moore appealed

---

[1] We assume without deciding that Moore's *Giglio* claim was timely raised under 28 U.S.C. § 2244(d)(1)(D).  *See Pace v. DiGuglielmo*, 544 U.S. 408, 416 n.6 (2005) (noting that § 2244(d)(1)(A) "provides one means of calculating the [statute of] limitation[s] with regard to the 'application' as a whole . . . , but [§ 2244(d)(1)(B), (C), and (D)] require claim-by-claim consideration").

8                    Opinion of the Court                    22-14207

to this Court, and we granted Moore a COA on his *Giglio* claim as to Gaines.

## II.    STANDARDS OF REVIEW

"We review *de novo* a district court's denial of a habeas corpus petition." *Broadnax v. Comm'r, Ala. Dep't of Corr.*, 996 F.3d 1215, 1222 (11th Cir. 2021) (citing *Ward v. Hall*, 592 F.3d 1144, 1155 (11th Cir. 2010)). However, our review of the state court's resolution of habeas claims is significantly curtailed. Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), we can only provide a habeas petitioner habeas relief if "his claim is meritorious and the state court's resolution of that claim was contrary to, or an unreasonable application of, clearly established Supreme Court precedent, or was based on an unreasonable determination of the facts presented in the state court proceeding." *Id.* (citing 28 U.S.C. § 2254(d)). This highly deferential standard was "*meant*" to be "difficult to meet," and "stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings." *Harrington v. Richter*, 562 U.S. 86, 102 (2011) (emphasis added) (citation omitted).

We presume the state's factual determination is correct, and the petitioner must rebut this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). A state court's factual determination is only unreasonable if no fair-minded jurist could agree with that determination. *Holsey v. Warden, Ga. Diagnostic Prison*, 694 F.3d 1230, 1257 (11th Cir. 2012) (citing *Harrington*, 562 U.S. at 101). Thus, a state court's factual determination is not unreasonable

simply because we "would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010) (citation omitted). In short, AEDPA demands that we give state court decisions "the benefit of the doubt." *Ventura v. Att'y Gen., Fla.*, 419 F.3d 1269, 1285 (11th Cir. 2005) (citing *Holland v. Jackson*, 542 U.S. 649, 655 (2004)).

## III.    DISCUSSION

The standard of review set forth in AEDPA bars Moore from relief on his *Giglio* claim because the district court properly determined that the state court's adjudication of the claim was not based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d)(2). Moore argues the district court erred in concluding that Moore did not prove Gaines's trial testimony to be false. He further argues that the district court erred in finding the testimony was not material. We disagree.

"A *Giglio* violation occurs when the prosecution solicits or fails to correct false or perjured testimony" that could, "'in any reasonable likelihood have affected the judgment of the jury.'" *Rodriguez v. Sec'y, Fla. Dep't of Corr.*, 756 F.3d 1277, 1302 (11th Cir. 2014) (quoting *Giglio*, 405 U.S. at 153-54)). To succeed on a *Giglio* claim, a petitioner must show: "(1) the prosecutor knowingly used perjured testimony or failed to correct what he subsequently learned was false testimony; and (2) such use was material, i.e., that there is any reasonable likelihood that the false testimony could . . . have affected the judgment." *Guzman v. Sec'y, Dept. of Corr.*, 663 F.3d 1336, 1348 (quoting *Ford v. Hall*, 546 F.3d 1326, 1332 (11th Cir.

2008)).  When presenting a *Giglio*-based claim on federal habeas review, a petitioner must also establish that the error was not harmless.  *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).  An error is harmless on collateral review unless it had a "substantial and injurious effect or influence in determining the jury's verdict."  *Guzman*, 663 F.3d at 1348  (quoting *Brecht*, 507 U.S. at 637-38).

Applying these standards to Moore's claim, Moore failed to show that Gaines's testimony regarding the Little Terry chase was false during Moore's trial.  At trial, when defense counsel asked Gaines if he had seen Little Terry the day of the murder, Gaines replied, "Not that I can remember."  At the evidentiary hearing, Gaines testified that he had told a defense investigator that he had chased Little Terry, but when asked if that chase was the same day as the murder, Gaines stated, "I can't recall."

Our case law requires Moore to conclusively show that Gaines's testimony "was actually false."  *See Maharaj v. Sec'y for Dep't of Corr.*, 432 F.3d 1292, 1313 (11th Cir. 2005) (citations omitted) (explaining that in the *Giglio* context, a suggestion of falsity is not enough; rather, the defendant must prove the testimony was false).  While some might question the full veracity of Gaines's testimony, we cannot say that "no 'fairminded jurist' could agree" with the Supreme Court of Florida's factual determination that Moore failed to show that Gaines's trial testimony was false.  *See Holsey*, 694 F.3d at 1257 (quoting *Harrington*, 562 U.S. at 101).  Thus, the Supreme Court of Florida's determination was not unreasonable and is entitled to deference.  *See* 28 U.S.C. § 2254(d)(2).

Because Moore failed to show that Gaines's trial testimony was false, we decline to reach the second element of his *Giglio* claim, i.e., whether the testimony was material.

## IV. CONCLUSION

For the foregoing reasons, we affirm the district court's denial of Moore's habeas petition.

**AFFIRMED.**

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

February 21, 2024

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number:  22-14207-P
Case Style:  Thomas James Moore v. Secretary, Florida Department of Corrections, et al
District Court Docket No:  3:06-cv-00127-MMH

Opinion Issued
Enclosed is a copy of the Court's decision issued today in this case. Judgment has been entered today pursuant to FRAP 36. The Court's mandate will issue at a later date pursuant to FRAP 41(b).

Petitions for Rehearing
The time for filing a petition for panel rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise provided by FRAP 25(a) for inmate filings, a petition for rehearing is timely only if received in the clerk's office within the time specified in the rules. **A petition for rehearing <u>must</u> include a Certificate of Interested Persons and a copy of the opinion sought to be reheard.** <u>See</u> 11th Cir. R. 35-5(k) and 40-1.

Costs
No costs are taxed.

Bill of Costs
If costs are taxed, please use the most recent version of the Bill of Costs form available on the Court's website at www.ca11.uscourts.gov. For more information regarding costs, <u>see</u> FRAP 39 and 11th Cir. R. 39-1.

Attorney's Fees
The time to file and required documentation for an application for attorney's fees and any objection to the application are governed by 11th Cir. R. 39-2 and 39-3.

Appointed Counsel
Counsel appointed under the Criminal Justice Act (CJA) must submit a voucher claiming compensation via the eVoucher system no later than 45 days after issuance of the mandate or the filing of a petition for writ of certiorari. Please contact the CJA Team at (404) 335-6167 or

cja_evoucher@ca11.uscourts.gov for questions regarding CJA vouchers or the eVoucher system.

Clerk's Office Phone Numbers

| | | | |
|---|---|---|---|
| General Information: | 404-335-6100 | Attorney Admissions: | 404-335-6122 |
| Case Administration: | 404-335-6135 | Capital Cases: | 404-335-6200 |
| CM/ECF Help Desk: | 404-335-6125 | Cases Set for Oral Argument: | 404-335-6141 |

OPIN-1 Ntc of Issuance of Opinion